**SCHUYLKILL HAVEN AREA SCHOOL DISTRICT,**
Petitioner

v.

**RHETT P. and Katrina P., Parents and Natural Guardians of C.P., Respondents.**

**Schuylkill Haven Area School District, Petitioner**

v.

**Rhett P. and Katrina P., Parents and Natural Guardians of M.P., Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 13, 2004.

Decided Sept. 8, 2004.

Gina K. DePietro, New Britain, for petitioner.

Rhett P., petitioner, pro se.

BEFORE: PELLEGRINI, J., and LEAVITT, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Schuylkill Haven Area School District (School District) appeals from two decisions of the Commonwealth of Pennsylvania, Special Education Due Process Appeals Panel (Appeals Panel) awarding compensatory education to C.P. and M.P. (Children), the Children of Rhett P. and Katrina P. (Parents), for its failure to provide them with a free appropriate public education during the time individualized education programs were created after their transfer to the School District from a private school.

C.P. and M.P. are both minors with multiple disabilities and are eligible for special education programs and services.[1] For four years, the Children attended Saint Joseph Center for Special Learning, a private school for children with disabilities, run by the Diocese of Allentown. That school conducted evaluations and prepared Individualized Education Programs (IEPs)[2] in September 2002. At the request of the Parents, in January 2003, the Children underwent further testing. C.P., who was 14 years of age at the time, had test results which indicated, among other things, a composite I.Q. of 59, which was classified as being within the mentally retarded range, low scores in communication and daily living skills as well as socialization, math skills of a six-year old and reading skills of a second-grader. M.P., who was also 14 years of age when the testing was performed, had test results which indicated a composite I.Q. of 60, which was classified as being within the mentally retarded range, low scores in communication and daily living skills, moderate low scores in socialization, math skills of a seven-year old and not able to read to the second-grade level.

In September 2003, the Children were transferred and enrolled in the School District[3] at which time the Parents provided

---

1. C.P.'s disabilities include mild mental retardation, autism, attention deficit hyperactivity disorder, asthma, obesity and food allergies. M.P.'s disabilities include mild mental retardation, mild cerebral palsy, attention deficit hyperactivity disorder and microcephaly. M.P. also suffers from migraines and has food allergies.

2. An IEP is a written plan for the provision of appropriate early intervention services to an eligible young child, including services to enable the family to enhance the young child's development. The IEP shall be based on and be responsive to the results of the evaluation. 22 Pa.Code § 14.154.

3. There is no explanation provided in the briefs or the record as to why the Children were transferred to the School District from the private school in 2003 or when they were enrolled and if there was sufficient time from

the School District with the private school's IEP results and evaluations and the results of the testing performed in January 2003. The School District also requested the Parents' permission to perform an evaluation which was granted on September 2, 2003. In the meantime, the School District refused to place the Children in special education and instead placed them in a regular seventh-grade classroom with an adapted curriculum at their level and an aide to assist them in the school setting until the re-evaluation had been performed. The evaluation report was issued on September 11, 2003, which concluded that the Children had multiple disabilities and were in need of specially designed instruction. In October 2003, two IEP meetings were held at which the School District in its IEPs recommended that the Children be placed in a life skills program run by the intermediate unit in a regular school in a neighboring district because the School District did not have such a program at a level suitable for the Children. The Parents disapproved of the

recommendation because of the program's placement outside of the School District and because they believed that the Children should have been able to receive more academic instruction than the life skills program offered.[4]

The Parents filed an appeal requesting a special education due process hearing. In addition to disputing the recommendations, they also sought compensatory education arguing that the School District had violated the Individuals with Disabilities Education Act (IDEA) which mandates that all states receiving federal assistance must provide a free appropriate public education (FAPE) to all students with disabilities.[5] 20 U.S.C. § 1400. Because the School District did not have a life skills program appropriate for the Children, the hearing officer ordered the School District to immediately assign the Children to the intermediate unit middle school life skills class in a neighboring school district where the proposed IEP dated October 16, 2003, would be implemented with assessments to follow.[6] However, the hearing officer did

enrollment to the beginning of school to complete an IEP. However, that issue is not raised on appeal.

4. The Parents pointed out that the Children had been in life skills all of their life and still could not read or do simple math. Also, a lengthy bus ride could present problems because of the Childrens' Attention Deficit Disorders.

5. A free appropriate public education means special education and related services that are provided at no costs to the parents and meet the standards of the state educational agency and are provided in conformity with an IEP that meets the requirements of 34 C.F.R. §§ 300.340–300.350.

6. Specifically, the hearing officer ordered:
   • Within 15 school days of receiving this order, conduct an assessment of C.P.'s pre-vocational skills in light of the instruction in pre-vocational skills included in the life skills class to which he will be assigned,

and the goals and objectives currently included in his proposed IEP, in order to determine C.P.'s actual needs for participating in the standard pre-vocational component of the life skills class;
   • Within 10 school days of completing the additional assessments, amend the September 2003 evaluation report to include the results of the evaluation of C.P.'s pre-vocational skills;
   • Within 15 school days of completing the additional assessments, convene C.P.'s IEP team to review his IEP and assure: a) that all goals and objectives in his IEP are based upon a current assessment of all of his needs for both academic learning and pre-vocational skills; b) that the IEP is sufficiently individualized to meet all such needs, even if doing so requires modifications to the standard life skills program to which he is assigned; c) that to the maximum extent appropriate for him, C.P. is included in the regular educational curriculum for portions of the school day when

not award compensatory education because there were no regulations requiring the School District to utilize the IEP from the private school. The Parents, acting *pro se*, filed exceptions arguing, *inter alia*, that the hearing officer erred by failing to find that the School District should have utilized the IEP that existed prior to the Childrens' transfer to the School District, and that the hearing officer erred by placing the Children in the life skills program outside the School District. They again sought compensatory education and placement for the Children in a learning support class within the School District.

Finding that the School District should have placed the Children in special education when they were transferred into the School District at the beginning of the 2003–2004 school year, the Appeals Panel granted the Parents' exceptions in part. However, it also found that the appropriate placement for the Children was in the life skills program in the neighboring school district pending further evaluation. The Appeals Panel then awarded C.P. and M.P. compensatory education for six hours per school day, beginning with the day the Children transferred into the School District and ending on the day of their placement into the intermediate unit middle school life skills class in a neighboring school district because the regulations did not prohibit the School District from utilizing the private school's IEP.

■ The School District filed an appeal from that decision arguing that the Appeals Panel erred in awarding compensatory education because Pennsylvania special education regulations do not require school districts to implement IEPs developed by private schools such as St. Joseph Center for Special Learning.

22 Pa.Code §§ 14.131(a)(3) and (4) provide:

(3) If a student with a disability moves from one school district in this Commonwealth to another, the new district shall implement the existing IEP to the extent possible or shall provide the services and programs specified in an interim IEP agreed to by the parents. The interim IEP shall be implemented until a new IEP is developed and implemented or until the completion of due process proceedings under this chapter.

(4) If a student with a disability moves into a school district in this Commonwealth from another state, the new school district may treat the student as a new enrollee and place the student into regular education and it is not required to implement the student's existing IEP.

■ The Appeals Panel recognized that neither regulation—22 Pa.Code

---

students are typically not engaged in academic pursuits, such as for assemblies and lunch, as well as for all non-academic subject areas, such as physical education, art, and music;
• Specifically consider, through the IEP team, whether it is appropriate to include C.P. in regular education classes in which skills similar to the pre-vocational component of the IU life skills class are taught, if such classes are offered to regular education middle school students at either his home school or the school in which the life skills program is offered; and

• Include an explicit assessment of supplemental aids and services which may be needed to permit C.P. to participate in non-academic regular education classes such as gym, art, music, home economics and shop, and assign C.P. to a more restrictive setting for those curriculum areas only if it would not be appropriate for him to participate in such classes with non-disabled peers even with supplemental aids and services.
(Reproduced Record at 59a). An identical order was issued regarding M.P.

§ 14.131(a)(3) or (4)—was applicable in determining whether to award compensatory education but, nonetheless, found that the IEP should have been followed because "the regulations never intended to discriminate between private school and public school students with disabilities." (*See* Reproduced Record at 10). However, the regulations do just that because a "new" school district is only obligated to follow an IEP from a Pennsylvania school district, not a private school or a school district from another state. The regulations evidence an intent that a public school district should make an independent evaluation of the student's needs relative to education when carrying out its public duty with public funds to provide a free appropriate public education. Because the regulations only require that an IEP must be utilized when a student transfers *from a public school district* in this Commonwealth to another, and that is not what happened here, the Appeals Panel erred by awarding compensatory education to C.P. and M.P.

Accordingly, that portion of the Appeal Panel's order awarding compensatory education is reversed.

## ORDER

AND NOW, this *8th* day of *September,* 2004, the portions of the orders of the Commonwealth of Pennsylvania, Special Education Due Process Appeals Panel, Nos. 1452A and B, dated February 23, 2004, awarding compensatory education, are reversed.